KYLE SCHUMACHER (BAR #121887)
kyle@schumacherlane.com
**SCHUMACHER LANE PLLC**
P.O. Box 558
Spring Branch, TX 78070
503-482-8137 ph
210-783-1383 fax

Attorneys for Plaintiff
Sofia Maria Kennedy

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON – MEDFORD DIVISION

| | |
|---|---|
| Sofia Maria Kennedy**,**<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Experian Information Solutions, Inc.; and DOES 1 through 100 inclusive,<br><br>　　　　　Defendants. | CASE NO. 1:22-cv-509<br><br>PLAINTIFF'S COMPLAINT FOR DAMAGES:<br><br>1.  Violation of Fair Credit Reporting Act |

COMES NOW Plaintiff **SOFIA MARIA KENNEDY** ("Plaintiff"), an individual, based on information and belief, to allege as follows:

### INTRODUCTION

1. This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b), 1681i(a)(2)(A), 1681i(a)(4), and 1681i(a)(5)(A). Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt.

2. Defendant Experian Information Solutions, Inc. ("Experian") is not reporting Plaintiff's Select Portfolio Service, Inc. ("Select") account accurately.

3. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system and unfair credit reporting methods undermine the public confidence that is essential to the continued functioning of the banking system.

4. Creditors intentionally and routinely ignore both industry standards and FCRA requirements for accurately reporting debt information. Creditors know that deviating from recognized credit reporting standards and FCRA requirements will make it difficult for consumers to raise their credit scores and improve their creditworthiness.

5. This was not the intent of Congress when it enacted the Fair Credit Reporting Act.

## JURISDICTION & VENUE

6. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

7. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. § 1681.

8. This venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

9. Plaintiff alleges that, for purposes of establishing residency under 28 U.S.C. § 1391(b)(1), each of the named Defendants conducts sufficient business within the forum state and this Court has personal jurisdiction over each Defendant under 28 U.S.C. §§ 1391(c)(2) and 1391(d).

## GENERAL ALLEGATIONS

10. At the time of filing for Chapter 13 bankruptcy, Plaintiff's home located at 3208 Balsum Way, Medford, Oregon 97504 was subject to two, separate mortgages. The first mortgage (hereinafter, "First Mortgage") was paid directly by Ms. Kennedy pursuant to the plan. The second mortgage (hereinafter, "Second Mortgage") was avoided as a lien pursuant to a court order, declared a non-priority, general unsecured claim, and discharged upon Plaintiff's bankruptcy discharge.

11. Bank of America, N.A. (hereinafter, "BOA"), was the loan originator on the First Mortgage and Second Mortgage. Select was the loan servicer of the Second Mortgage held by BOA.

12. Plaintiff alleges that due to inaccurate reporting, she previously disputed the Select tradeline and subsequently filed a complaint on or about July 10, 2020, *Sofia Maria Kennedy. v. Equifax Information Services, LLC; et al.* Case No. 1:20-cv-01121-CL (the "July 2020 Complaint").

13. Plaintiff alleges that the July 2020 Complaint resulted in the deletion of the Select tradeline.

14. Plaintiff alleges that the Select account was deleted from her Experian credit report.

15. Plaintiff alleges that subsequently, the Select account was added back to her Experian credit report.

16. Plaintiff alleges that it is patently incorrect and misleading for a tradeline which was deleted to be reported back on her credit report.

17. Plaintiff alleges that it is patently incorrect and misleading for a debt which was avoided and discharged to be reported with derogatory payment history post-discharge.

18. Plaintiff alleges that each and every Defendant is familiar with FCRA requirements and subscribes thereto.

19. Plaintiff alleges that each and every Defendant understands that deviation from the FCRA requirements or credit reporting industry standards can, and often does, result in the denial of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported in accordance with the recognized standards.

20. Plaintiff alleges that all of Defendants' actions alleged herein were committed knowingly, intentionally, and in reckless disregard of the unambiguous meaning of the FCRA, regulatory guidelines on accurate reporting, and credit reporting industry standards to purposefully undermine Plaintiff's ability to repair her Credit Score.

21. In the alternative, Plaintiff alleges that each and every Defendants' actions were the result of negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, all which inevitably led to inaccurate, misleading, or incomplete credit reporting.

## FACTUAL BACKGROUND

22. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.     FICO, Inc.**

23. FICO is a leading analytics software company with its principal headquarters in San Jose, California. FICO has over 130 patents related to their analytics and decision management technology and regularly uses mathematical algorithms to predict consumer behavior, including credit risk.

24. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent (90%) of lending decisions. [1]

25. A FICO Score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

26. Base FICO Scores range from 300 to 850, while industry specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

27. Different lenders use different versions of FICO Scores when evaluating a consumer's creditworthiness.

28. There are twenty-eight (28) FICO Scores that are commonly used by lenders.

29. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies ("CRAs").

30. The three largest CRAs are Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and TransUnion, LLC ("TransUnion").

31. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models, or algorithms, are based on the premise that the information provided by the CRAs is accurate and complies with both the FCRA requirements and credit reporting industry standards.

32. There are five (5) key factors that a FICO Score considers: (1) payment history; (2) amount of debt; (3) length of credit history; (4) new credit; and (5) credit mix.

33. Each of the five (5) factors is weighted differently by FICO.

34. In other words, thirty-five percent (35%) of a consumer's FICO Score relates to payment history, thirty percent (30%) relates to the amount of debt, fifteen percent (15%) relates to the length of credit history, ten percent (10%) relates to new credit, and the final ten percent (10%) relates to a consumer's credit mix, which is the different types of debts reported.

---

[1] While there are other credit scoring models, it is well established that FICO Score is by far the most widely used by lenders, employers, insurance companies, and lessors. *See* https://www.myfico.com (a website created and operated by Fair Isaac Corporation ("FICO"), "the company that invented the FICO credit score").

35. Payment history refers to whether a consumer has paid their bills in the past, on time, late, or missed payments. The more severe, recent, or frequent the late payment information, the greater the impact on a FICO Score. Public record items, such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

36. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

37. Once a delinquent account has been remedied, the longer the account stays current the more a consumer's FICO Score should increase.

38. FICO Scores are entirely dependent upon information provided by data furnishers ("DFs"), such as banks and other financial institutions, to CRAs.

39. A FICO Score is a summary of your credit report. In simple terms, the FICO Score is calculated by taking the five (5) factors (payment history, amount of debt, length of credit history, new credit, and credit mix) for each account in a credit report and calculating a three digit number for lenders to review. "When you apply for credit, lenders need a fast and consistent way to decide whether or not to loan you money." *See* https://www.myfico.com/credit-education/what-is-a-fico-score. If a lender or employer did look past the FICO Score into a consumer's reports, chances are they either do not understand the tradeline meanings themselves, or, if they do and realize something appears incorrect, they are incapable of recalculating the complex mathematical algorithms in a FICO Score to take the found error into consideration. Therefore, most lenders and employers do not review individual accounts, just a consumer's FICO Score (or average of FICO Scores) in order to make "quicker decisions". *See id*.

40. Some lenders also use internal scoring models. In these instances, the lenders attempt to produce their own "FICO Score" based upon their internal credit scorecard models. These models are, similar to FICO, based upon algorithms, business rules, codes, etc. and take information reported in the credit reports and assign weights to them in order to assess risk and make determinations as to consumer's creditworthiness. FICO Scores and the scores based off internal models being collectively referred to as "Credit Score".

### B.   e-OSCAR

41.   e-OSCAR is the web-based system developed by Experian, Equifax, TransUnion, and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

42.   When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-OSCAR to the appropriate DF.

43.   The ACDV contains codes next to certain data fields associated with a credit file.

44.   When a data furnisher reports on a consumer's account as part of its regular reporting, it sends a regular monthly transmission to each CRA.

45.   When a data furnisher reports on a consumer's account outside of its regular monthly transmission, it sends an automated universal dataform ("AUD") to each CRA.

46.   For clarification, an AUD, or other regular transmission, is sent when the data furnisher initiates reporting on a consumer's account (e.g., opening an account, updating the account each month, closing an account, etc.), whereas an ACDV is how a data furnisher receives a dispute request from the CRAs and how it updates reporting back to the CRAs after its investigation of the matter.

### C.   Plaintiff's Second Mortgage was Discharged Pursuant to her Chapter 13 Bankruptcy

47.   Plaintiff filed a voluntary petition for Chapter 13 bankruptcy on March 24, 2014 in order to repair her creditworthiness and Credit Score.

48.   Plaintiff filed a Motion to Value Property and Avoid Wholly Unsecured Lien on May 1, 2014.

49.   On June 25, 2014, the Second Mortgage lien was avoided and the debt was declared a non-priority, general unsecured claim, and was to be discharged upon the completion of the Chapter 13 Plan and bankruptcy discharge.

50.   Plaintiff's bankruptcy was discharged on September 24, 2019.

### D.   Plaintiff's Credit Report Contains an Inaccurate and Adverse Tradeline, which Plaintiff Disputed to no Avail

51.   On October 1, 2021, Plaintiff ordered an Experian credit report to ensure proper reporting by Plaintiff's creditors (the "October 1 Credit Report").

52. Plaintiff did not notice an adverse tradeline in her October 1 Credit Report, reporting inaccurate, misleading, or incomplete information that did not comply with FCRA standards; however, Plaintiff received an electronic notification on or about October 9, 2021, that her Credit Score had drastically dropped.

53. On October 9, 2021, after Plaintiff received the electronic notification, Plaintiff ordered a second Experian credit report to ensure proper reporting by Plaintiff's creditors (the "October 9 Credit Report").

54. Plaintiff noticed the adverse tradeline of Select in her October 9 Credit Report, reporting inaccurate, misleading, or incomplete information that did not comply with FCRA standards or the resolution of the July 2020 Complaint.

55. Plaintiff then disputed the inaccurate tradeline regarding the Select account via certified mail to Experian on or about December 16, 2021 (the "Dispute Letter").

56. Plaintiff's Dispute Letter specifically put Experian on notice that the Select account was to be deleted from her Experian credit report. In addition, the Dispute Letter informed Experian that Plaintiff received a discharged on September 24, 2019 and the tradeline was reporting post-discharge payment history.

57. Plaintiff's Dispute Letter also detailed what was perceived to be problematic about the account, addressing the tradeline issues individually.

58. Plaintiff requested that any derogatory reporting be updated to ensure accuracy and completeness of the account as required by the FCRA.

59. Plaintiff is informed and believes that Experian received Plaintiff's Dispute Letter and, in response, sent Plaintiff's dispute to Select, as the data furnisher, via an ACDV through e-OSCAR.

60. On February 19, 2022, Plaintiff ordered a third Experian credit report to determine if her account was updated.

   a. **Inaccuracy – Select**

61. Despite actual knowledge, Experian continued to report the Select account, beginning in 277002XXXXXXX. Reporting of this tradeline is patently inaccurate as the account was previously deleted by Select.

62. In addition, the account is reported with multiple derogatory remarks, including a "120" days past due each month from January 2020 through July 2020, and "CO" for charge off notation for September of 2020. All of this payment history is patently incorrect as the debt was voided on June 25, 2014 and discharged on September 24, 2019. This post-discharge payment history is also misleading as it appears as if the debt was not discharged but fell delinquent years after the bankruptcy concluded and was eventually charged off.

63. Plaintiff alleges that Experian did not investigate whether Plaintiff's tradeline should have been deleted or whether the post-discharge payment history was correct due to the lien avoidance and discharge.

64. Experian did not delete the tradeline or correct the inaccurate reporting.

65. Experian was provided adequate notice that Plaintiff was disputing the inaccurate and misleading information, but Experian failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

66. Based upon Plaintiff's dispute, Experian should have known that Plaintiff's tradeline was previously deleted and therefore should not be reporting at all; especially not reporting with post-discharge payment history.

67. The most basic investigation would include a simple review of its reporting in light of the fact that Plaintiff's tradeline was previously deleted and discharged in order to determine if the reporting complies with the maximum possible accuracy and completeness standard of the FCRA.

68. Plaintiff alleges that Experian did not review if its reporting complied with the unambiguous language of the FCRA, regulatory guidelines on accurate reporting under the FCRA, or its own internal records concerning Plaintiff's account.

69. If Experian reviewed such standards, it would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

70. Experian should not have added the tradeline, and once it did, it should have deleted the tradeline after receiving Plaintiff's Dispute Letter.

71. By continuing to report the Select account as described herein, it is injuring Plaintiff's creditworthiness.

72. Further, as this severely derogatory account is being used to calculate Plaintiff's Credit Score, the credit score alone being what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions. Specifically, Plaintiff's FICO Score 8 dropped from 760 to 684.[2]

73. The lack of investigation and reporting of inaccurate and incomplete information by Experian is unreasonable.

**E.  Damages**

74. Plaintiff pulled the credit report at issue at a cost for access to the report, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

75. As a result of the incorrect reporting, Plaintiff has incurred out-of-pocket expenses, and has also suffered emotional harm, physical sickness, and excessive stress resulting in doubt as to the effectiveness of the Fair Credit Reporting Act and the power of this Court to preserve and perpetuate a consumer's right to an accurate credit report as intended by Congress.

76. Plaintiff has been denied credit and is unable to rebuild her credit based on the inaccurate reporting by Experian. Plaintiff's diminished creditworthiness and reduced Credit Score, all resulting from Experian's inaccurate reporting, has caused her to abandon her intentions to apply for certain credit.

77. Experian's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

## FIRST CAUSE OF ACTION
### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
### (Against Defendants and Does 1-100)

78. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.  Experian Failed to Assure Credit Reporting Accuracy**

79. Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and the credit files it published and maintained concerning Plaintiff.

---

[2] Plaintiff's October 1, 2021 Experian credit report lists a FICO Score 8 of 760 whereas her October 9, 2021 Experian credit report lists a FICO Score 8 of 684. There were only two changes between these reports: one account added another month of positive payment history and the Select account was reported as described herein.

80. Had Experian maintained reasonable procedures to assure maximum accuracy, it would have never reported the Select account, nor would it have reported the Select account as described herein.

81. Experian knew, or should have known, that (1) the tradeline should not be reported on Plaintiff's credit report, and (2) if it were reported, that Plaintiff filed bankruptcy and the payment history was post-discharge, thus it could not be accurate. Further, Experian knew, or should have known, that continuing to report the account does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

82. As a result of Experian's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

83. Congress specifically recognized the "elaborate mechanism developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." *Nayab v. Capital One Bank (USA), NA*, 942 F. 3d 480, 492 (9th Cir. 2019). The investigation and evaluation of Plaintiff's creditworthiness, credit standing, credit capacity, character, and general reputation as a consumer are all damaged by the inaccurate reporting Experian allowed.

A.  **Willful Violations**

84. Experian's violations, as described herein, were willful; specifically, Experian, has intentionally and purposefully set up a system where inaccuracies are not only probable, but inevitable.

85. Experian regularly, as a policy, ignores disputes by consumers and fails to perform even a basic investigation regarding the disputes. Additionally, Experian regularly fails to forward disputes to data furnishers, thereby frustrating the entire dispute process.

86. To the extent Experian does send consumer disputes, it sends these disputes to employees who do not live within the continental United States to hide or subvert a consumer's liability to confront the individual(s) directly responsible for approving accurate reporting.

87. Experian's employees receive little to no training concerning how to accurately report consumer debt.

88. Instead, Experian's employees are instructed to parrot whatever information a data furnisher provides regardless of whether the information is accurate.

89. Experian's employees are regularly expected to review and approve over ninety (90) disputes per day, rendering less than five (5) minutes to review, investigate, and respond to each dispute received.

90. Experian has intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

91. As a result of Experian's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

92. Experian's violations were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

93. Experian has specific knowledge that the Select account should not have been reported on Plaintiff's account. By allowing the Select account to not only report, but to report patently incorrect and misleading information shows Experian acted willfully.

94. In the alternative, Experian was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

95. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Experian in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(1))

### (Against Defendants and Does 1-100)

96. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.   Experian Failed to Reinvestigate the Disputed Information in violation of 15 U.S.C. § 1681i(a)(1)**

97. Pursuant to 15 U.S.C. § 1681i(a)(1), Experian was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's dispute regarding the Select account.

98. Thus, Experian failed to conduct a reasonable investigation and correct the misleading and/or inaccurate statements on the account within the statutory time frame.

99. Experian is not a passive entity bound to report whatever information a data furnisher provides.

100. Plaintiff alleges Experian is readily familiar with the FCRA requirements and credit reporting industry standards.

101. Based on the foregoing, Plaintiff alleges that Experian can, and does, suppress inaccurate information from being reported when data furnishers provide inaccurate information.

102. Experian can and does instruct data furnishers on how to properly report certain accounts from time to time upon request from a data furnisher.

103. Experian failed to conduct a reasonable investigation because any basic investigation would have uncovered that Select should not have been reporting the tradeline.

104. Had Experian conducted a proper investigation, it could have suppressed the Select debt from reporting on Plaintiff's credit report. However, Experian continued to report the account as described herein.

105. Experian, therefore, did not conduct even the most basic investigation regarding credit reporting industry standards, otherwise the aforementioned would have been uncovered.

106. In the alternative, Plaintiff alleges that Experian did not send an ACDV to Select to confirm the accurate reporting of its account. Despite receiving the Dispute Letter providing notice of the inaccuracies, Experian did not delete or correct the tradeline or conduct an investigation.

107. In the alternative, if Experian deemed Plaintiff's Dispute Letter "frivolous or irrelevant" under 15 U.S.C. § 1681i(a)(3), Experian failed to notify Plaintiff of such determination as required by 15 U.S.C. § 1681i(a)(3)(B). As Plaintiff received no such notice from Experian, Plaintiff alleges Experian deemed her Dispute Letter valid, and thus triggered its obligations under 15 U.S.C. § 1681i(a)(1) and (2)(A), for which it did not comply.

**B.     Willful Violations**

108. Plaintiff alleges that Experian has reported based upon objectively unreasonable interpretations of the FCRA standards of credit reporting and regulatory guidelines on how to accurately report under the FCRA.

109. Plaintiff further alleges that Experian has not properly trained those directly investigating disputes on the FCRA requirements or credit reporting industry standards and, as such, has developed reckless policies and procedures.

110. Plaintiff alleges that rather than train its employees on accurate credit reporting, FCRA requirements, and industry standards, Experian's employees tasked with reviewing disputes are expected to confirm the information being reported as "accurate" instead of investigating the reporting.

111. Experian's reporting of the Select account directly lowered Plaintiff's FICO Score 8 and significantly reduced her creditworthiness.

112. Plaintiff believed she dealt with this account in her bankruptcy. Then, years later she had to litigate over the issue. Just as she believed it was finally resolved, Plaintiff found out Experian, of its own volition, is still trying to impact her credit and prevent her from rebuilding her life post-bankruptcy.

113. Due to the repeated, intimate knowledge of the issues here, Experian's reporting is willful. This can be seen due to the fact Experian chose to add the account in question, with new patently incorrect and misleading information, after having actual knowledge of the prior issues and deletion of the tradeline.

114. In the alternative, Experian was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

## THIRD CAUSE OF ACTION

**(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))**

**(Against Defendants and Does 1-100)**

115. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.  Experian Failed to Review and Consider all Relevant Information**

116. Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

117. Experian's violations of 15 U.S.C. § 1681i(a)(4) have caused Plaintiff to suffer actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

### B.   Willful Violations

118.   Experian's violations were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

119.   In the alternative, Experian was negligent in failing to review and consider all relevant information Plaintiff submitted, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

120.   Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION
### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
### (Against Defendants and Does 1-100)

121.   Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

### A.   Experian Failed to Delete Disputed and Inaccurate Information

122.   Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

123.   Experian's violations of 15 U.S.C. § 1681i(a)(5)(A) have resulted in Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

### B.   Willful Violations

124.   Experian's violations were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

125.   In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

126.   Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

127. WHEREFORE, Plaintiff prays for judgment as follows:

    a. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

    b. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;

    c. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

    d. Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681n and 1681o;

    e. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, *et seq.*; and

    f. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.


Respectfully submitted,

**SCHUMACHER LANE PLLC**

Dated: April 4, 2022

*/s/ Kyle Schumacher*
Kyle Schumacher
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of this matter by jury.

Respectfully submitted,

**SCHUMACHER LANE PLLC**

Dated: April 4, 2022

*/s/ Kyle Schumacher*
Kyle Schumacher
Attorneys for Plaintiff